**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-cv-24887-BLOOM**

OSCAR JOSE ORTIZ MESA,

Petitioner,

v.

WARDEN, Federal Detention Center Miami;
TODD M LYONS, Miami ICE Field Office Director;
ACTING DIRECTOR, U.S. DHS ICE; MARKWAYNE
MULLIN, Secretary of DHS; and TODD BLANCHE,
Acting U.S. Attorney General,

Respondents.
_______________________________________________/

**ORDER ON PETITION FOR HABEAS CORPUS**

**THIS CAUSE** is before the Court upon Petitioner Oscar Jose Ortiz Mesa's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241. ECF No. [1]. After the Court issued an Order to Show Cause, ECF No. [4], Respondents filed a Response, ECF No. [6]. Petitioner filed a Reply. ECF No. [7]. The Court has considered the Petition, the Response, Reply, the record in the case and is fully advised. For the reasons set forth below, the Petition is granted.

## I. BACKGROUND

Petitioner is a 61-year-old native of Cuba. ECF No. [1] ¶ 24. Petitioner entered the United States without inspection around May 29, 2008. *Id.* ¶ 25. He was issued a Notice to Appear and was later paroled on June 24, 2009. *Id.* ¶¶ 25–26. On January 3, 2012, Petitioner was taken into Immigration and Customs Enforcement ("ICE") custody. ECF No. [6]. Petitioner was ordered removed on February 15, 2012. ECF No. [1] ¶ 27. Petitioner waived appeal of the order, rendering it administratively final. ECF No. [6] at 2. On March 29, 2012, ICE released Petitioner under an Order of Supervision ("OSUP"). ECF No. [1] ¶ 28. Petitioner has a 2010 criminal conviction. ECF

No. [6] at 2.

On June 21, 2026, Petitioner boarded a flight at the Miami International Airport and attempted to return to Cuba, but he was not allowed entry. ECF No. [1] ¶ 29. He was returned to the United States that same day and taken into ICE custody. *Id.* Petitioner is currently detained at the Miami Federal Detention Center ("FDC"), pending execution of the removal order. *Id.*

Petitioner filed the instant Petition, arguing that his detention is illegal for three reasons: (1) he lacks a meaningful opportunity to contest third country removal through claims of fear of persecution or torture (Count I); (2) he is detained without compliance with the regulatory review process (Count II); and (3) his detention violates 8 C.F.R. § 241.13 and due process (Count III). ECF No. [1]. Respondents argue that the Court lacks jurisdiction to adjudicate the Petition. ECF No. [6] at 3–5. Petitioner is lawfully detained under 8 U.S.C. § 1231, Petitioner has not been detained for sufficiently long to claim unreasonable detention, and he has not met his burden to show that removal is not reasonably foreseeable. *Id.* at 5–7. Respondents indicate ICE intends to remove Petitioner to Mexico, not Cuba, and therefore the likelihood of Petitioner's removal to Cuba is inapplicable. *Id.*

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 2241(a), district courts have the authority to grant writs of habeas corpus. Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3). The Court's jurisdiction extends to challenges involving immigration detention. *See Zadvydas*, 533 U.S. at 687.

## III. DISCUSSION

### A. Jurisdiction

The Court cannot grant habeas relief if it lacks subject matter jurisdiction over the Petition in the first place; as such, the Court is obliged to consider its own jurisdiction. *See Belleri v. United States*, 712 F.3d 543, 547 (11th Cir. 2013) ("In the federal tandem, jurisdiction takes precedence over the merits. Unless and until jurisdiction is found, both appellate and trial courts should eschew substantive adjudication." (alterations added and citations omitted)). "Once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).

Petitioner brings this case under 28 U.S.C. § 2241, the primary federal habeas statute, which authorizes federal courts to hear "statutory and constitutional challenges to post-removal-period detention." *Zadvydas*, 533 U.S. at 688; *see* ECF No. [1] ¶ 9. Respondents, however, argue that 8 U.S.C. § 1252(g) applies to bar review of Petitioner's claims. ECF No. [6] at 4. Specifically, Respondents argue that § 1252(g) "prohibits a district court from interfering with the government's decision or action to execute an order of removal." *Id.* at 4. Petitioner replies that he is not asking the Court to prevent ICE from executing his removal order and thus the Court has jurisdiction to review Petitioner's challenge to ICE's continued detention without adequate process. ECF No. [7] at 2–3.

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). The Supreme Court has explained that § 1252(g) is a "discretion-protecting provision" intended to prevent the "deconstruction, fragmentation, and hence prolongation of removal proceedings." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999) ("AAADC").

That said, the Supreme Court has carefully defined the jurisdiction-stripping contours of § 1252(g). It explained that § 1252(g) is "narrow" and does not cover "all claims arising from deportation proceedings" or impose "a general jurisdictional limitation." *AAADC*, 525 U.S. at 482, 487. Instead, it bars review of "just three 'discrete actions': actions to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1272 (11th Cir. 2021) (quoting *AAADC*, 525 U.S. at 482). "[A]lthough 'many other decisions or actions' may be 'part of the deportation process,' only claims that arise from one of the covered actions are excluded from [a court's] review (at least by this provision)." *Id.* (quoting *AAADC*, 525 U.S. at 482).

This "arise from" language is construed similarly narrowly. It does not "sweep in any claim that can technically be said to 'arise from' the three listed actions[;]" instead, the statute "refer[s] to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018). Thus, to determine whether a claim "arise[s] from" one of the covered actions, "courts must focus on the action being challenged," *Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020), and assess whether one of the three actions listed in § 1252(g) forms the "basis of the claim," *Gupta v. McGahey*, 709 F.3d 1062, 1065 (11th Cir. 2013) *suggestion for reh'g en banc denied*, 737 F.3d 694 (2013), *cert. denied*, 34 S.Ct. 2840 (2014).

So, for instance, a noncitizen who seeks a stay of a removal order "runs headlong into § 1252(g)" regardless of how he frames the claim because, fundamentally, the action being challenged is the decision to "execute" a removal order. *Camarena*, 988 F.3d at 1273. By contrast, a noncitizen who challenges the "underlying legal bases for [] discretionary decisions and actions," *Madu v. U.S. Atty. Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006), or who challenges the length of his post-removal-order detention, *Zadvydas*, 533 U.S. at 688, does not face a jurisdictional barrier.

Here, Petitioner does not challenge the decision to execute his removal, the Government's general authority to deport or detain him, or anything else arising from the "execution" of a removal order. Instead, he challenges ICE's compliance with its own statutory requirements when revoking his OSUP and re-detaining him pending execution of his removal order. *See generally* ECF No. [1]. These are plainly permissible challenges. The Court therefore has jurisdiction to adjudicate the Petition and turns to the merits.

**B. Failure to Comply with Regulatory Procedures**

Petitioner argues that ICE did not follow its own regulations before re-detaining Petitioner. ECF No. [1] at 20–24. Petitioner was not provided any of the processes required under 8 C.F.R. § 214.13 or § 214.4(*l*). *Id.* Petitioner was also re-detained in violation of § 241.13 and due process because there was no determination that there is a significant likelihood that he may be removed in the reasonably foreseeable future or that he violated his conditions of release. *Id.* at 23.

Respondents state Petitioner is subject to final removal and is detained pending his removal, as permitted by 8 U.S.C. §1231(a)(6).[1] ECF No. [6]. Respondents do not respond to Petitioner's arguments that ICE failed to follow its own regulations before re-detaining him. *See generally id.* Respondents submit a Declaration of Deportation Officer Francisco J. Fondeur, Jr. ECF No. [6-6]. The Declaration states "[Enforcement and Removal Operations ("ERO")] is in the process of issuing a revocation of the order of supervision, serving Petitioner with a Notice of Removal to Mexico, and providing an informal interview." *Id.* [6-6] ¶ 17.

[1] Respondents acknowledge that Petitioner arrived at the Miami International Airport on June 21, 2026, and presented himself for admission. ECF No. [6] at 3. However, Respondents do not argue that Petitioner is an "arriving alien," an "applicant for admission," or that he is detained pursuant to 8 U.S.C. § 1225. *See generally id.* Accordingly, the Court proceeds based on the Respondents' assertion that Petitioner is subject to final removal and is detained pending his removal pursuant to 8 U.S.C. § 1231(a)(6). *See* ECF No. [6] at 5.

Petitioner replies that Respondents' Response concedes a violation of 8 C.F.R. § 241.1(*l*), requiring notification and an informal interview upon revocation of release. ECF No. [7] at 2. The Court agrees.

Under 8 C.F.R. § 241.4, release may be revoked for a violation of the conditions of release, § 241.4(*l*)(1), or, as relevant to this case, as an exercise of discretion when, "it is appropriate to enforce a removal order," § 241.4(*l*)(2)(iii). Section 241.4(*l*)(1) establishes the procedure for revoking release when the conditions of release have been violated:

> (*l*) Revocation of release—
>
> (1) Violation of conditions of release. Any alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody. Any such alien who violates the conditions of an order of supervision is subject to the penalties described in section 243(b) of the Act. Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

8 C.F.R. § 241.4(*l*)(1).

Here, Respondents argue Petitioner was taken into custody to execute the pending final order of removal, which invokes 8 C.F.R. § 241.4(*l*) because "[i]t is appropriate to enforce the removal order against you as ICE has the ability and the means to effectuate your removal." ECF No. [6] at 3. Petitioner's OSUP was revoked under § 241.4(*l*)(2), not § 241.1(*l*)(1). Although § 241.4(*l*)(2) does not expressly provide for notice and an informal interview, the notice and opportunity to respond requirements apply to both sections and apply regardless of the reason for revocation. *Grigorian v. Bondi*, 824 F. Supp. 3d 1243, 1252 (S.D. Fla. 2025); *see also Ceesay*, 781 F. Supp. 3d at 163 (collecting cases). "The failure to provide Petitioner with an informal interview promptly after his re-detention or to otherwise provide a meaningful opportunity to contest the

reasons for revocation violates both ICE's own regulations and the Fifth Amendment Due Process Clause." *Grigorian*, 824 F. Supp. 3d at 1256. As such, Petitioner was entitled to notice of the revocation of release and an informal interview providing the opportunity to respond to the reasons for his revocation.

Numerous courts have held that a delay of weeks or months does not comply with the regulation's requirement for a prompt informal interview. *See, e.g.*, *Doval v. U.S. Immigr. and Customs Enforcement*, Case No. 26-cv-247-JEP-SJH, 2026 WL 1153072, at *3 (M.D. Fla. Apr. 29, 2026) (finding an eight-day delay between detention and the informal interview does not comply with the regulation); *Grigorian*, 824 F. Supp. 3d at 1256 (finding seventy-five days of detention without a meaningful opportunity to be heard violates due process).

Here, Petitioner was detained on June 21, 2026. In a Declaration signed on July 23, 2026, Respondents declare that "[Enforcement and Removal Operations ("ERO")] is in the process of issuing a revocation of the order of supervision, serving Petitioner with a Notice of Removal to Mexico, and providing an informal interview." ECF No. [6-6] ¶ 17. At the time that Declaration was signed, Petitioner was detained for *32 days* without receiving notice and learning the basis for why his release was revoked in the first place. Moreover, there is no indication on the record that Petitioner has since been provided notice or an opportunity to be heard. Petitioner has now been detained for 137 days. Being detained for 137 days without receiving the required notice that the OSUP is revoked and without being afforded a meaningful opportunity to respond to the reasons for revocation plainly does not satisfy the regulations and does not comport with due process.

It is an "unremarkable proposition that an agency must abide by its own regulations." *See Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979). The failure to abide by regulations does not guarantee reversal of the agency's action. *See Sharma v. Drug Enf't Agency*, 511 F. App'x

898, 902 (11th Cir. 2013). However, "[t]he opportunity to contest detention through an informal interview is not some ticky-tacky procedural requirement; it strikes at the heart of what due process demands." *Grigorian*, 2025 WL 2604573, at *9. Respondents' failure to provide notice and an informal interview for *at least* 32 days after Petitioner was detained violates ICE's own regulations and the Fifth Amendment Due Process Clause. *Grigorian*, 2025 WL 2604573, at *10; *see also Zhu v. Genalo*, 798 F. Supp. 3d 400, 414 (S.D.N.Y. 2025) ("ICE's failure to follow its own regulations and provide Petitioner with notice or an interview violated Petitioner's procedural due process rights"). Petitioner's detention is unlawful. Accordingly, Petitioner shall be released. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("The typical remedy for [unlawful] detention is, of course, release.") (alteration added; citation omitted); *Ceesay*, 781 F. Supp. 3d 137, 166 (W.D.N.Y. 2025) ("In sum, because ICE did not follow its own regulations in deciding to re-detain Ceesay, his due process rights were violated, and he is entitled to release.").

Because the Court grants Petitioner's relief based on Respondents failing to follow their own procedures in revoking Petitioner's release, the Court does not address Petitioner's other claims. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (declining to address an additional claim in a habeas petition after granting relief on another claim because "any relief [petitioner] could obtain on that claim would be cumulative").

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition, **ECF No. [1]**, is **GRANTED**.
2. Respondents are **ORDERED** to release Petitioner from custody no later than **5:00 p.m. ET on November 6, 2026**, on conditions of supervision pursuant to 8 U.S.C. § 1231(a)(3). Respondents shall return all of Petitioner's personal belongings to him upon release.

3. **By November 9, 2026**, Respondents shall file a notice with the Court certifying compliance with this Order.
4. The Clerk of Court shall **CLOSE** this case.
5. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 5, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record